UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ERIN REAVES,        ) | CASE NO.   3:23-cv-403 |
| Plaintiff,   ) | **JURY TRIAL DEMANDED** |
| ) | |
| v.        ) | |
| ) | |
| IMMEDIATE MEDICAL CARE, P.A.   ) | |
| a Florida Profit Corporation,     ) | |
| Defendant.    ) | |
| _____ ) | |

## COMPLAINT FOR VIOLATIONS OF TITLE III OF THE ADA

Plaintiff, ERIN REAVES, an individual (hereinafter "Plaintiff"), by and through her undersigned counsel, hereby sue the Defendant, IMMEDIATE MEDICAL CARE, P.A., a Florida Profit Corporation (hereinafter "Defendant"), for declaratory and injunctive relief, pursuant to Title III, 42 U.S.C. §§ 12181-12189 of the Americans with Disabilities Act ("ADA"), and the relevant regulation implementing title III, 28 C.F.R. Part 36, and alleges:

## INTRODUCTION

1. On July 26, 1990, Congress enacted the ADA, 42 U.S.C. § 12101 *et seq*. Commercial enterprises were provided one and a half (1.5) years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant has ten (10) or fewer employees and gross receipts of $500,000.00 or less. *See* 42 U.S.C. §12182; *see also* 28 C.F.R. § 36.508(a).

2. Congress found, among other things, that:

a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

b. Historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

c. Discrimination against disabled individuals persists in such critical areas including employment, housing, public accommodations, transportation, communication, recreation, health services, voting and access to public services and public facilities;

d. Individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, benefits, or other opportunities; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1-3),(5) and (9).

3. Congress explicitly stated that the purpose of the ADA was to:

a. Provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

  b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

  c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

  4. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA. *See* 28 C.F.R § 36 and its successor the 2010 ADA Accessibility Guidelines[1] (hereinafter referred to as "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $55,000.00 for the first violation and $110,000.00 for each subsequent violation.[2]

  5. Under the 28 C.F.R. § 36.202(a) "A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation."

  6. Under the 28 C.F.R. § 36.206(c) illustrations of conduct prohibited by this section include, but are not limited to:

---

[1] https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf (last visited February 10, 2022)

[2] Effective April 1, 2014 the civil penalties were increased, based on inflation, from $55,000.00 to $75,000.00 for the first violation and from $110,000.00 to $150,000.00 for subsequent violations. See 28 C.F.R. § 36 and § 85.

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

7. Under the 28 C.F.R. § 36.201(a) "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation."

8. Under the 28 C.F.R. § 36.104

["Service animal"] means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors.

9. Fla. Stat. § 413.08(1)(d) similarly defines a service animal as

an animal that is trained to do work or perform tasks for an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental

4

disability. The work done or tasks performed must be directly related to the individual's disability and may include, but are not limited to, guiding an individual who is visually impaired or blind, alerting an individual who is deaf or hard of hearing, pulling a wheelchair, assisting with mobility or balance, alerting and protecting an individual who is having a seizure, retrieving objects, alerting an individual to the presence of allergens, providing physical support and assistance with balance and stability to an individual with a mobility disability, helping an individual with a psychiatric or neurological disability by preventing or interrupting impulsive or destructive behaviors, reminding an individual with mental illness to take prescribed medications, calming an individual with posttraumatic stress disorder during an anxiety attack, or doing other specific work or performing other special tasks. A service animal is not a pet.

10. Fla. Stat. § 413.08(4) makes Defendant's conduct criminal in nature:

Any person, firm, or corporation, or the agent of any person, firm, or corporation, who denies or interferes with admittance to, or enjoyment of, a public accommodation or, with regard to a public accommodation, otherwise interferes with the rights of an individual with a disability or the trainer of a service animal while engaged in the training of such an animal pursuant to subsection (8), commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083 and must perform 30 hours of community service for an organization that serves individuals with disabilities, or for another entity or organization at the discretion of the court, to be completed in not more than 6 months.

11. Failure to comply with these requirements constitutes a violation of the ADA.

## JURISDICTION AND VENUE

12. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been vested with federal question jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq. See also* 28 U.S.C. § 2201 and § 2202 as well as the 2010 ADA Standards.

13. The remedies provided by Fla. Stat. § 760 are not exclusive, and state administrative remedies need not be exhausted in connection with suits brought under the ADA. Filing a lawsuit, even without prior notice to the defendant or state agencies,

constitutes a valid legal recourse to redress discrimination that allows the disabled to "fully participate in all aspects of society." 42 U.S.C. § 12101(a)(1-4). Therefore, Plaintiff has exhausted all administrative remedies that are due.[3]

14. Venue is properly located in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because, (1) the Defendant is located in this district, and (2) Defendant conducts business within this judicial district, and or (3) all of the events or omissions giving rise to Plaintiff's claims occurred and are occurring within this district.

## PARTIES

15. Plaintiff is a natural person who currently resides in Orange Park, Florida and is otherwise *sui juris*.

16. Defendant, IMMEDIATE MEDICAL CARE, P.A., is a Florida Profit Corporation holding itself to the public as an urgent care facility, and is authorized to conduct, and is conducting business within the state of Florida.

17. Defendant may be served through its registered agent Ramsey Moosavi, MD, 3783 Biggin Church Rd. W, Jacksonville, FL 32224.

---

[3] In *Medina-Rodriguez v. Fernandez Bakery, Inc. et al,* Civil No. 16-2578 (FAB) (D.P.R. June 14, 2017), the Court denied defendant's motion to dismiss for, among others, alleged failure to exhaust administrative remedies. The majority of courts across the country addressing the issue have come to the same conclusion that Title III of the ADA does not incorporate the notice requirement of Title II of the Civil Rights Act. *See, e.g., Williams v. Hermanson Family LP*, 1997 WL 33471624, at 3-4; *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000) (stating "[a] plaintiff in a private Title III action is not required to provide any notice to any state or local agency as a prerequisite to filing suit"); *Burkhart v. Widener Univ., Inc*., 70 F. App'x 52, 54 (3d Cir. 2003) (stating "[t]he District Court here adopted the same reasoning [in *Botosan*], and we will do so as well*"); Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062, 1064 (C.D. Cal 2000) (stating "[b]y its express terms, the ADA adopts only Section 2000a-3(a), which says nothing about notice or exhaustion of remedies"); *Guzman v. Denny's Inc*., 40 F. Supp. 2d 930 (S.D. Ohio 1999) (stating "[t]o hold that the entirety of § 2000a-3 is adopted, is to impermissibly render superfluous the explicit textual reference to §2000a-3(a)"); *Walker v. Asmar Ctr., LLC,* 2011 WL 5822394, at *6 (E.D. Mich. Nov. 15, 2011) (agreeing with *Guzman* and finding plaintiff was not required to exhaust administrative remedies).

18. Defendant is the operator of the commercial space of real property located at 9770 Old Baymeadows Rd., Jacksonville, FL 32256.

19. Therein, the Defendant operates an urgent care facility known as Immediate Medical Care. (which is also referenced as "Premises," or "subject facility").

20. At all times material Defendant acted through its employees and agents.

## FACTUAL ALLEGATIONS

21. Plaintiff suffers from chronic anxiety and post-traumatic stress disorder ("PTSD"), amongst other disabilities. Plaintiff is an individual with disabilities, within the meaning of 42 U.S.C. § 12102 and 28 C.F.R. § 36.105

22. The Plaintiff's disabilities are defined in 42 U.S.C. §12012(1)(A), 42 U.S.C. §12012(1)(B), and in 42 U.S.C. § 3602(h).

23. Plaintiff's doctor Hunter Stenzel, D.O. found that Plaintiff requires the use of a service animal due to what constitutes as a "qualified disability" under the ADA.

24. Plaintiff owns a dog named Malia that is a service animal as that term is defined by 28 C.F.R. § 36.104 and Fla. Stat. § 413.08(1)(d).

25. Malia is trained to do work or perform tasks for the benefit of Plaintiff.

26. The work or tasks performed by Malia are directly related to Plaintiff's disabilities because Malia prevents or interrupts impulsive or destructive behaviors, alerts to rises in heart rates, and is trained to intervene in the event Plaintiff has a panic attacks.

27. The Premises is an urgent care facility which is open to the general public, and therefore is a place of "public accommodation" pursuant to 42 U.S.C. § 12181(7)(F) and 28 C.F.R. § 36.104.

28. On or about April 5, 2023, Plaintiff visited the Premises with Malia for a medical appointment.

29. At the time of the Plaintiff's visit to the Premises (and prior to instituting this action), Plaintiff had and was regarded as having a "qualified disability" under the ADA.

30. Malia was leashed and had a harness on that conspicuously identified her as a service animal.

31. Plaintiff's appointment was cancelled, and she was told to leave the Premises because "We can't have animals inside of our office, we have patients with allergies."

32. Defendant told Plaintiff "You have to leave immediately, immediately, with the dog, dogs can't be in our office."

33. Allergies are not a not valid reasons for denying access or refusing service to people using service animals.

34. Malia is housebroken and was not out of control and therefore none of the exceptions found in 28 C.F.R. § 36.302(c)(2) apply.

35. Plaintiff attempted to educate Defendant as to the law pertaining to service animals under the ADA.

36. Defendant proceeded to humiliate Plaintiff by threatening, and then actually calling the Jacksonville Sheriff's Office.

37. Plaintiff personally visited the Premises, but was denied full and equal access and full and equal enjoyment of the facilities, services, goods and amenities within the Premises even though Plaintiff was a "bona fide" patron.

38. In this context, Plaintiff's "bona fide" patron status results from the motivation to avail herself of the services of Defendant's urgent care facility.

39. Plaintiff has suffered irreparable harm, humiliation, degradation and discrimination in violation of her civil rights through Defendant's policies and practices of discrimination on the basis of her disability or perceived disability.

40. On or about April 5, 2023, and at all times relevant, Plaintiff was denied full and equal access to, and full and equal enjoyment of, the Defendant's Premises.

41. Plaintiff is continuously aware of the violations at Defendant's Premises and is aware that it would be a futile gesture to return to the Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination at the hands of Defendant.

42. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

43. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property. Plaintiff would like to be able to patronize the Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but are currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Premises until corrective measures are taken at the Premises to eliminate the discriminatory conditions and to ensure that no individual with a disability is excluded, denied services, segregated or otherwise

treated differently than other individuals because of the absence of auxiliary aids and services.

44. As the owner or operator of the subject facility, Defendant is required to comply with the ADA.

45. Additionally, Plaintiff is a tester in this litigation and seeks future compliance with all federal and state laws. Plaintiff will return to the Premises to avail herself of its services and to determine compliance with the disability access laws once it is represented to her that IMMEDIATE MEDICAL CARE, P.A. is accessible.

46. Plaintiff is currently deterred from doing so because of Plaintiff's knowledge that she will be told to leave with Malia her service animal, and that Defendant will call the Jacksonville Sheriff's Office to harass her and Malia.

47. If Defendant's unlawful conduct is not corrected and prohibited by this Court,, Plaintiff will face unlawful and discriminatory conduct by Defendant again.

48. It's been established that failure to remove these inaccessible conditions violates the ADA and Florida law and requiring compliance with industry access standards is a remedy available to the Plaintiff.

49. Pursuant to 42 U.S.C. § 12182(7), 28 C.F.R. § 36.104 and the 2010 ADA Standards, Defendant's Premises is a place of public accommodation covered by the ADA by the fact it provides services to the general public and must be in compliance therewith.

50. Defendant has discriminated, and continues to discriminate against Plaintiff and others who are similarly situated by denying access to and full and equal enjoyment of

goods, services, facilities, privileges, advantages and/or accommodations located at the Premises, as prohibited by 42 U.S.C. § 12182 and 42 U.S.C. § 12101 *et seq*.

51. Plaintiff visited the Premises on or about April 5, 2023 and was denied full and equal access to the facilities, and therefore suffered an injury in fact.

52. Plaintiff currently lives in close proximity, 24.1 miles from Defendant's Premises. *See Houston v. Marod*, 733 F.3d 1323, 1336 (11th Cir. 2013).[4]

53. Plaintiff lives in Orange Park and regularly travels to the Jacksonville, Florida area in which Defendant's Premises is located, as she resides in the community, and Plaintiff will continue to travel to the area in the near future.

54. Plaintiff may need to return and enjoy the goods and/or services at the Premises in the near future, and expects to have independent visits for personal reasons. Plaintiff intends to visit the Premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the Premises.[5]

55. Defendant's failure and refusal to provide persons with disabilities with full and equal access to its Premises only serves to further the discrimination and injury endured by Plaintiff.

56. Plaintiff is presently deterred from visiting Defendant's Premises, known to be out of compliance with the ADA, which constitutes an actual and present injury as surely as future visits to the same location constitute a threatened and imminent injury. "The likelihood of [plaintiff] suffering future injury thus is not contingent upon events that are

---

[4] "Plaintiff . . . lives in the next county. He does not live hundreds of miles away from the store with no particular reason to return." *Houston*, 733 F.3d at 1336.
[5] Thus, contrary to the holding in *Norkunas v. Park Rd. Shopping Ctr., Inc.*, by way of her dual motivation, Plaintiff has established more than a "naked assertion" of desire to return to defendant establishment." 777 F. Supp. 2d 998 (W.D.N.C. 2011).

speculative or beyond [her] control. Rather, the cause of the injury continues to exist, and the likelihood of [Plaintiff] encountering that cause in the future depends only on [Plaintiff's] own volition." *Houston*, 733 F.3d at 1337.[6]

57. The violations present at Defendant's Premises, create a hazard to Plaintiff's safety, both physical and mental.

58. The violations present at Defendant's Premises infringe on Plaintiff's rights to travel free of discrimination. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's Premises. By continuing to operate a place of public accommodation with discriminatory conditions, Defendant's contribute to the Plaintiffs' sense of isolation and segregation and deprives the Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. Plaintiff is deprived of the meaningful choice of freely visiting the same accommodations readily available to the general public and is deterred and discouraged from additional travel. By maintaining a public accommodation with violations, Defendant deprives the Plaintiff the equality of opportunity offered to the general public.

59. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 C.F.R. 36.505.

---

[6] "Under the totality of the facts here, the threat of future injury to [plaintiff] is not merely 'conjectural' or 'hypothetical.' Instead it is 'real and immediate.'" *Houston*, 733 F.3d at 1337.

60. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter Defendant's Establishment to make those facilities readily accessible and usable to Plaintiff, and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures their violations of the ADA.

61. Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

62. All conditions precedent to this action have occurred or have been waived.

**WHEREFORE**, Plaintiff demands judgment against Defendant and respectfully requests the following injunctive and declaratory relief:

(a) The Court declares that the Defendant is in violation of the ADA and order the building and the attendant business therein to be closed to the public until such time that they are deemed by this Court to be accessible;

(b) As such, in case of Defendant failing to file any paper or pleading as required by law and defaults, Plaintiff seeks an Order of this Court enjoining Defendant from further or continuing operations until such time as Defendant demonstrates that it is in compliance with the requirements of the ADA in its business operations;

(c) The Court enter an Order requiring Defendant to modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability. 42 U.S.C. §12182(b)(2)(A); 28 C.F.R. §§ 36.302(a), (c);

(d) The Court enter an Order requiring Defendant to not refuse to admit a person with a disability because that person uses a service animal nor shall it request documentation concerning the service animal. It also shall not charge a person with a disability any extra fee or ask a person with a disability to comply with any additional condition of service because they use a service animal;

(e) The Court enter an Order requiring Defendant's doctors, management, and staff shall undergo training regarding the ADA requirements to accommodate individuals with disabilities who use service animals, including a review of the Department of Justice's technical assistance document, Frequently Asked Questions About Service Animals and the ADA, available at: https://archive.ada.gov/regs2010/service_animal_qa.html.

(f) The Court enter an Order requiring all of Defendant's new employees be trained on the requirements of the ADA within thirty (30) days of their hire date;

(g) The Court enter an Order requiring Defendant to maintain a log of all guests accompanied by a service dog. Defendant shall not retaliate against or otherwise coerce any individual with a disability who uses a service dog for filing a complaint with the Department or otherwise exercising rights protected by the ADA. 42 U.S.C. § 12203(a).

(h) The Court enter an Order directing Defendant to evaluate and make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; to safeguard that no individual with a service animal is excluded, denied services, segregated or otherwise treated differently than other individuals.

(i) The Court award reasonable attorney's fees, costs and litigation expenses (including, but not limited to court costs and any expert fees) pursuant to 42 U.S.C. § 12205.

(j) The Court awards such other and further relief as it deems necessary, just and proper.

Respectfully submitted this 6th day of April , 2023 by:

**THOELE|DRACH**

BY: _____

**Justin Seth Drach, Esq.**
Florida Bar No. 103016
Email: justin@thoeledrach.com
**Amanda Marie Thoele, Esq.**
Florida Bar No. 75118
Email: amanda@thoeledrach.com
3744 Dupont Station Court S
Jacksonville, FL 32217
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
*Attorneys for Plaintiff*